Commonwealth *v.* Tirpak et al., Appellants.

Argued November 10, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Jerome Hahn,* for appellant.

*Sanford S. Finder,* for appellant.

*John W. Edwards, Jr.,* for appellant.

*Walter W. Gregory, Jr.,* for appellant.

*George E. Anthou,* Assistant District Attorney, with him *Jess D. Costa,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., March 19, 1970:

These are appeals from the judgments of the Court of Common Pleas of Washington County, by the defendant-appellants, Lilly Jane Florida, George E. Tirpak, Harry T. Collins, and Samuel G. Heckel, after conviction of possession of marijuana as proscribed by Section 4 of the Act of July 11, 1917, P.L. 758, as amended, 35 P.S. Section 780-4(q) ; and from the denial by the court below of post-trial motions.

The defendants were sentenced as follows: Collins to a term of three (3) to twenty-three (23) months in the County Prison; and Florida, Tirpak, and Heckel to terms of three (3) months each in the County Prison.

The defendants principally complain that the court below erred in refusing to suppress evidence obtained by the use of an alleged illegal search warrant: and further that even with the fruit of the invalid warrant there was insufficient evidence to support the verdict.

The transcript of the suppression hearing discloses that Officer Costanza of the Allegheny County Police received information that a "pot party" was being held at a certain address in Peters Township, Washington County. Costanza alerted the township police and Sergeant Fetty of the Peters Township Police was assigned to the case.

A surveillance of the property was established. The lights in the house were on and they watched people enter and leave the house and it was apparent that a party of some kind was going on. They went to the local magistrate to seek a search warrant. Together Costanza and Fetty related the results of the surveillance and Costanza related the information, in detail that he had received from what he considered a reliable confidential source. Although most of the information was given by Costanza, Fetty, the local officer, signed the affidavit.

The complaint of the defendants based on this technical ground of signing is without merit. "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." *U. S. v. Ventresca,* 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965). *Commonwealth v. Burns,* 215 Pa. Superior Ct. 333, 257 A. 2d 74 (1969).

The defendants rely most strongly on *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). Headnote 9, pp. 724-25, sets forth the problem:

"9. Although an affidavit supporting a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances from which the informant concludes that contraband, such as narcotics, is where he claims it is and some of the underlying cir-

cumstances from which the officer concludes that the informant, whose identity need not be disclosed, is credible or his information reliable."

The Affidavit upon which the warrant was issued reads as follows:

"On information received from a confidential source, I, Officer Gene A. Fetty, Peters Township Police Department, McMurray, Washington County, Pennsylvania, have just and reasonable grounds for believing and do believe that dangerous drugs and narcotics as defined in the Act of 1961, Section 4, Penal Law 1664, defined in the Act of 1961, 35 P.S. 780-4, as amended, the exact quantity and type being to affiant unknown is being possessed, controlled, used, taken, and administered, by persons on the inside of a certain dwelling located at 316 East McMurray Road, Washington County, Pennsylvania, and I, the affiant, have cause to believe that some or all the persons in said dwelling have been using or under the influence of said drugs and narcotics."

If all we had was this affidavit, the argument of the defendants would prevail. However, it was held by this Court in *Commonwealth v. Crawley*, 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), at page 76 that "In Pennsylvania when a warrant is under attack on the ground there were insufficient facts to support a finding of probable cause the rule has been that sworn facts told to the magistrate at the time the warrant was issued are admissible to support the finding of probable cause." See also, *Commonwealth v. Burns,* supra.

As the court below said: "The courts, at our level at least, should not strain to invalidate warrants, but defend them wherever proper. There is the presumption that official duty is regularly performed. 'A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers

from submitting their evidence to a judicial officer before acting.'" *United States v. Ventresca,* supra.

The record of the suppression hearing discloses that Costanza in the presence of the magistrate and Sergeant Fetty stated that he received a tip from an informant whom he had used many times and found to be reliable that a "pot party" was going on in the home of Ida Jane Jansma on McMurray Road. Her parents were supposed to be in New York. He was also advised that people were coming to the home from the Shady Side area of Pittsburgh and a map had been provided to show the way. The marijuana was in the house and that acid or LSD was supposed to be brought in. He also informed the magistrate that the surveillance disclosed that some kind of party was in progress with people coming in and going out of the lighted rooms of the home.

We agree with the court below that the magistrate had sufficient information before him to decide objectively that probable cause existed for the issuance of the warrant.

As to the contention that the evidence was insufficient to support the verdict, the record discloses: that on that early Monday morning about 1:30 a.m. the officers arrived at the Jansma home armed with a search warrant: that they found two persons standing outside the home and on entry found nine persons inside the house; seven of the people were in the game room and two in the living room; Florida was sitting on the floor in the game room; Tirpak was sitting by Florida; Heckel was sitting across from Florida in a chair. The game room measured fourteen feet by fifteen feet. A glass jar containing material identified as marijuana was located in the game room about five feet from Heckel, but within easy reaching distance of all defendants. In an ashtray in the center of the game room were found numerous warm, hand-rolled

cigarette butts which contained marijuana. They also found paper known as zig-zag paper that is used only for rolling cigarettes; soft music was playing and the room was scented by incense.

The Supreme Court held in *Comm. v. Townsend*, 428 Pa. 281, 286-87, 237 A. 2d 192 (1968), that ". . . in a prosecution based upon circumstantial evidence, conviction may not be based upon suspicion or conjecture, but rather the evidence must be such 'as reasonably and naturally to justify an inference of the guilt of the accused . . . and of such volume and quality as to overcome the presumption of innocence . . .' " Citing *Comm. v. Clinton*, 391 Pa. 212, 218, 219, 137 A. 2d 463 (1958). In *Townsend* the Supreme Court reversed a conviction of the crime of possession of a fire arm. The only evidence was that two weapons were in the car in which he was riding. The court pointed out that there was evidence to sustain a finding of power to control but that under the theory of joint control, *Comm. v. Whitman*, 199 Pa. Superior Ct. 631, 186 A. 2d 632 (1962), the second element of knowledge on the defendant's part of the presence of the weapons was not present.

The defendants were tried solely on the charge of possession and it is clear that no marijuana in any quantity was found on or taken from the defendants. The Commonwealth case rests entirely on circumstantial evidence. The Jury had before it evidence from which it could be inferred that a marijuana party was going on and that the four defendants were using the drug; that all the evidence pointed to the joint possession of the jar of marijuana in that each of the defendants could control its use. The Act does not require that the drugs be found on the defendant's person as it provides: "No person shall have in his possession or under his control . . . any of said drugs." The location of the marijuana and the position of the

defendants in the room clearly demonstrates the reasonableness of an inference that they not only had power to control its use but had also the knowledge of its presence before them.

Possession can be joint or several and may be inferred from the circumstances, as can the intent to exercise the control required. *Commonwealth v. Hooe,* 187 Pa. Superior Ct. 330, 144 A. 2d 580 (1958); *Comm. v. Thurman,* 167 Pa. Superior Ct. 642, 76 A. 2d 483 (1950); *Comm. v. Fine,* 166 Pa. Superior Ct. 109, 70 A. 2d 677 (1950).

The evidence produced is sufficient to sustain the verdicts.

Judgments affirmed and defendants are directed to appear before the sentencing Judge of the court below as directed to comply with the terms of the sentences.

---

DISSENTING OPINION BY HOFFMAN, J.:

I respectfully dissent from the opinion of the majority of this Court because I cannot "agree with the court below that the magistrate had sufficient information before him to decide objectively that probable cause existed for the issuance of the warrant."

Although the facts are summarized by the majority opinion, I believe it would be helpful to set out the relevant parts from the record. The police officer who gathered most of the information relied upon for the search warrant testified, in part, as follows:

". . . I had information from the informants that I work with that there is a pot party that was in progress and still in progress in McMurray Road. The informant contacted me, told me that there was a party going—Shadyside, where this originated from, and that they made a map, [which] showed them how to get the

directions to go to this Jansma's house on McMurray Road.

. . .

". . . [T]he parties [sic] was taking place at this Ida Jane Jansma's house. Her parents was [sic] supposed to be in New York. She had the house, the party was taking place at this house with different people from Shadyside in the Pittsburgh area was [sic] coming to and from this house on McMurray Road for the purpose of this pot party.

. . .

"There was going to be and was at the house at the time marijuana and that Monday morning and afternoon there was supposed to be 'acid' brought in, which is LSD.

"Q. Now, had you had occasion to use the information of this informant at prior times? A. Many a times. Q. And did this information that you had received turn out to be reliable? A. Very much so. . . . Q. . . . Did you observe this house on McMurray Road before this raid was made [and before you went for the search warrant]? A. Yes, we did. Q. And what did you observe there? A. We noticed that there was [sic] a lot of cars. . . . A. We seen [sic] the cars in the driveway, we seen [sic] a couple kids standing by the cars. The lights was [sic] on. No outside activity outside the kids being in the driveway, about four or five of them. A couple cars pulled out, a couple cars pulled in."

The hearing court summarized the above as follows:

"Let's see if I can sum this up. You had received information from a previously reliable confidential informant that there was to be a pot and possibly acid party at Jansma's in Peters Township, that there had been a map made for people from Shadyside to get there and, with certain other officers, you went out and you observed that some sort of a party was in progress, a number of people there, lights on in the

house, people coming and going. You then went before a Peters Township magistrate, related the information to him and to Fetty, and Fetty signed the complaint for the search warrant[.]"

Upon the above information a warrant was issued. I believe this information was insufficient, however, to support a finding of probable cause and to justify the issuance of a search warrant.

Probable cause exists if the factual evidence, which the police officer swears to, would warrant a man of reasonable caution in believing that a crime was or is being committed. *Carroll v. United States,* 267 U.S. 132, 161, 45 S. Ct. 280 (1925). In most instances, in reviewing the issuance of a warrant, we need only ascertain what facts were discovered by the police officer and sworn to before the magistrate, whether his testimony should have been given credence, and whether the credible facts were enough to satisfy the "reasonable belief" rule.

When the police officer has discovered little or nothing on his own but is relying upon information supplied by an informant, we make a similar inquiry, modified by our concern with the hearsay now present. (1) We ascertain what facts were discovered by the informant. (2) We decide whether the police officer's testimony supports the belief that the informant was credible. (3) We then decide whether the credible facts (both the informant's and the police officer's) were enough to satisfy the "reasonable belief" rule. See, e.g., *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584 (1969); *Aguilar v. Texas,* 378 U.S. 108, 84 S. Ct. 1509 (1964).

Neither (1) nor (2) is satisfied by the testimony taken below.

With respect to the informant's information, we have only *his* conclusion that a "pot party" was in progress. We do not know how he came to that con-

clusion, whether from personal observation or from a third party. Were it from personal observation, we would be satisfied to rely upon it. But were it from a third party, we would need to know how the third party came to his conclusion and whether he was credible. The deficiency could have easily been remedied had we been given information upon which *we* could conclude that indeed a "pot party" was in progress. We cannot, however, permit an informant to make a conclusion we are constitutionally compelled to make ourselves. See *Spinelli v. United States*, supra at 415-416, 89 S. Ct. at 588-89; *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367, 369 (1948).*

With respect to the informant's credibility, we have only the police officer's conclusion that the informant's information had always been accurate. The police officer had obtained information "[m]any a times," and the information was "very much" accurate. We cannot make the same conclusion, however, because the police officer did not reveal what kind of information he had received in the past from the informant, whether the information had led to arrests, and if so, how many, and whether the information had led to convictions, and if so, how many. We cannot permit the police officer to make a conclusion we are constitutionally compelled to make ourselves. Ibid.

Thus, because we cannot conclude that the informant's information was reliable and because we cannot conclude that the informant was credible, the warrant

---

* In some instances, we can conclude that the informant's information was reliable if its character implies that it could only have been obtained first-hand. See, e.g., *Spinelli v. United States*, supra at 416-418, 89 S. Ct. at 589-590. The instant informant's information could have been obtained on the street or at the neighborhood bar. Id. at 417, 89 S. Ct. at 589. It is not the kind of detailed description that would make it reasonable for us to conclude that the informant had a factual basis for his conclusion.

should not have been issued. I would suppress the evidence obtained through the use of the unlawful warrant and, therefore, reverse the judgments obtained through the use of the evidence and grant a new trial.

MONTGOMERY and SPAULDING, JJ., join in this dissenting opinion.