COMMONWEALTH OF PENNSYLVA-
NIA ex rel. Francis FEILING, and
Jean Feiling, Plaintiffs,

v.

Charles SINCAVAGE, State Police Officer, Joseph Sauders, State Police Officer, Anthony Cancilla, Castle Shannon Police Officer, and Lee Miller, Castle Shannon Police Officer, Defendants.

Civ. A. No. 68-997.

United States District Court,
W. D. Pennsylvania.

May 21, 1970.

---

Edward A. Mihalik, of Weis & Weis, Pittsburgh, Pa., for plaintiffs.

Richard Goldberg, Deputy Atty. Gen., Harrisburg, Pa., for defendants Charles Sincavage and Joseph Sauders.

John J. Hickton, of Dougherty, Larrimer, Lee & Hickton, Pittsburgh, Pa., for defendants Anthony Cancilla and Lee Miller.

## OPINION AND ORDER

MARSH, Chief Judge.

This civil rights action was brought pursuant to Title 28 U.S.C. § 1343 and Title 42 U.S.C. § 1983. See: Pretrial Stipulation. No demand for jury trial was served and filed by any party within the time specified in the rule. Rule 38(b) (d), Fed.R.Civ.P. After non-jury trial, it is the opinion of the court that judgment should be entered in favor of the defendants.

During the evening of February 23, 1967, an armed robbery took place at Kormuth's Tavern in Clarksville, Greene County, Pennsylvania. The robbery was perpetrated by four men at approximately 10:30 P.M.[1] Less than one hour later, plaintiff, Francis Feiling, was arrested by Charles Sincavage, a defendant, and one Dere, both Pennsylvania State Policemen, while driving his pickup truck westwardly on Route 40 about eight miles from the tavern. His pickup truck matched witnesses' descriptions of the truck into which the loot was placed. The police took Feiling back to the tavern where he was identified as one of the robbers. His truck had the name "Dude" written on the doors and the side of the truck. Dude was Feiling's nickname. The loot consisted of three cases of Old Overholt Straight Rye Whiskey, one Colt .32 caliber revolver, cork plugs, deeds and insurance policies belonging to Eugene Kormuth. None of these articles was found in plaintiff's truck. What was found in the truck were: two placards containing the name "Erie Electrical Conduit Company",[2] a green ski mask, a dropcloth, a crowbar,

---

1. See Pretrial Stipulation, p. 2. The pretrial stipulations were admitted into evidence (T., p. 11).

2. Witnesses reported that the truck used in the robbery had white placard signs attached to both doors with masking tape, bearing a legend "Erie Electrical Construction" or "Conduit", and that they had seen a masked man place a case of liquor or beer in the back of the truck and cover it with a tarp or canvas cover.

a pair of black leather gloves, two pairs of brown cloth gloves, a box of .32 caliber cartridges, a box of .45 caliber cartridges, and three sets of broken handcuffs. When stopped by Officers Sincavage and Dere, Feiling could not possibly have had time or opportunity to traverse the seventy miles from Clarksville to his residence in Castle Shannon, Allegheny County, Pennsylvania.

Following his apprehension, Feiling remained in jail until March 10, 1967, when he was released on bail. He was subsequently convicted of armed robbery.

Other than Feiling, who has always maintained his innocence, the robbers were never arrested nor was the loot recovered.

On February 28, 1967, the defendants, Sincavage and Sauders, also a State Police Officer, with Detective Thomas Colura of the Allegheny County Detective Bureau, went to the office of Castle Shannon Justice of the Peace John R. Schuster to obtain a search warrant for the search of the Feiling residence at 4116 Steiger Street, Castle Shannon. All were sworn by the Justice, but only Sincavage orally related the underlying circumstances of the robbery, the substance of which is set forth above. These circumstances had provided a cogent basis for the arrest of Feiling by Sincavage. Also presented to the Justice was the theory that since the loot had been removed from Feiling's truck, there existed a reasonable possibility that it might have been secreted in the Feiling residence by his accomplices.

In addition, Sincavage related the substance of a confidential FBI report shown to him which purported to describe the method of operation of one "Dude" whose telephone number had been changed to the Feiling telephone number. Dude was a burglary suspect operating in the South Side of Pittsburgh and was known as a "safe man". His method of operation was to transport stolen safes to his home where he opened them. The description of Dude and Dude's wife did not fit the description of the plaintiffs.

■ The FBI report in and of itself did not provide probable cause for the issuance of the search warrant, but the other sworn facts did provide an adequate basis for the Justice to find probable cause and issue the warrant. If there was even a remote possibility that the other robbers had concealed the loot in the home of the captured robber, thorough investigation would require a search. The fact that the arrested suspect was known as Dude with Feiling's telephone number was an added circumstance for the consideration of the Justice.

Justice Schuster issued the search warrant to Officer Sincavage. It was the first such warrant he had issued, and since the narration of facts by Sincavage took about one-half hour, the Justice thought "it was too much" for him to write in on the space provided in the affidavit (T., pp. 134–135), so he inserted nothing. The warrant authorized a search of the house, garage and any vehicles on the premises.

Troopers Sincavage and Sauders and Detective Colura, along with two members of the Castle Shannon Police, the defendants, Cancilla and Miller, went to the plaintiffs' house to make the search. Mrs. Feiling, who knew Officer Cancilla, greeted them at the door and invited them inside. Officer Sincavage read the search warrant to Mrs. Feiling (T., pp. 76, 94, 127, 145 and 162).

The officers, with Mrs. Feiling present, searched the upstairs portion of the house. The cellar was searched by Detective Colura; none of the defendants went into the cellar (T., pp. 76, 77, 95–96, 120, 123). The garage and Mrs. Feiling's car were searched. None of the Kormuth Tavern loot was found.

The plaintiffs contend that the duct work in the cellar was torn out and damaged to the extent of $50; they also contend that "a green phone book" was taken by the defendants. No value was placed on the phone book.

None of the defendants damaged the duct work. Colura who searched the cellar is not a defendant. There is no allegation or proof that Sincavage or any other defendant directed Colura to enter the cellar and open up the duct work. Colura was an employee of the County of Allegheny, whereas Sincavage and Sauders were employees of the Commonwealth of Pennsylvania, and Cancilla and Miller were employees of the Borough of Castle Shannon. There was no evidence of an unlawful conspiracy.

■■■■ Even if it be assumed that Colura damaged the duct work and the defendants are responsible therefor, a trespass to property, negligent or intentional, is a common law tort and does not infringe the federal Constitution. It was not intended by the Fourteenth Amendment and the Civil Rights Acts that trespass to property, normally within the exclusive cognizance of the states, should become a matter of national concern. This federal court would lack jurisdiction of plaintiffs' claim for the duct damage were that claim brought alone.[3] In all the circumstances we reject pendent jurisdiction.

The entire search took about one hour. It was conducted in a lackadaisical manner. It was not hostile, but to the contrary was carried out in a polite and reasonably pleasant manner. The conduct of the defendants during the search was not outrageous. They acted in good faith.

■■■ In our opinion the search was reasonable. From the facts and circumstances presented to him under oath, the Justice reasonably found probable cause to issue the search warrant. The warrant, as amended, described the place to be searched and the things to be seized. We hold that the warrant was issued upon probable cause. *Cf.* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); United States v. Ventresca, 380 U.S. 102, 85 S. Ct. 741, 13 L.Ed.2d 684 (1965).

■■■■ Sworn facts related verbally to a Justice of the Peace by the police are admissible to support the finding of probable cause to issue a search warrant when the warrant is under attack. Although it would seem to be better practice to include the sworn facts in the body of the affidavit, a failure to do so is not fatal. Oral testimony in support of a search warrant satisfies the standard of reasonableness under the Fourth Amendment. "The Fourth Amendment requires only that probable cause be 'supported by Oath or Affirmation,' it does not require that the support be in writing. Oral testimony as well as affidavit in writing, may serve as the basis for the issuance of a warrant under constitutional standards." United States ex rel. Boyance v. Myers, 270 F.Supp. 734, 738 (E.D.Pa.1967), rev'd on other grounds, 398 F.2d 896 (3d Cir. 1968). Miller v. Sigler, 353 F.2d 424 (8th Cir. 1965); Sparks v. United States, 90 F.2d 61 (6th Cir. 1937); Commonwealth v. Tirpak, 216 Pa.Super. 310, 263 A.2d 917 (Pa.Super.1970); Commonwealth v. Somershoe, 215 Pa.Super. 246, 257 A.2d 341 (1969); Commonwealth v. Crawley, 209 Pa.Super. 70, 223 A.2d 885 (1966).

This opinion shall be deemed to embody findings of fact and conclusions of law required by Rule 52, Fed.R.Civ.P., 28 U.S.C.A.

An appropriate order will be entered.

---

**3.** Cf. Bradford Audio Corporation v. Pious, 392 F.2d 67, 72 (2d Cir. 1968); Kent v. Prasse, 385 F.2d 406 (3d Cir. 1967); Urbano v. Calissi, 384 F.2d 909 (3d Cir. 1967); Ream v. Handley, 359 F.2d 728 (7th Cir. 1966); Bowman v. Hale, 302 F.Supp. 1306 (S.D.Ala.1969); Johnson v. Hackett, 284 F.Supp. 933 (E.D.Pa. 1968); Travers v. Paton, 261 F.Supp. 110 (D.Conn.1966).