Commonwealth *v.* Conner, Appellant.

Argued March 9, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*John J. Krafsig, Jr.,* for appellant.

*Jerome T. Foerster,* Assistant District Attorney, with him *LeRoy S. Zimmerman,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, June 11, 1970:
Judgment of sentence affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

Appellant was convicted of unlawful possession of a firearm in violation of the Uniform Firearms Act, Act of June 24, 1939, P. L. 872, §628, as amended, 18 P.S. §4628. The evidence upon which appellant was convicted consisted of the testimony of a police officer who found an unlicensed firearm in appellant's car and the introduction of the firearm into evidence.

Appellant moved for the suppression of both the testimony and firearm because he claimed the firearm was seized in violation of the Fourth Amendment. Following a suppression hearing on appellant's claim, motion was denied. From judgment of sentence this appeal followed.[1]

Appellant was arrested for a criminal offense not here relevant across the street from where his car was parked. The police officer who arrested appellant then asked permission to search appellant's car. When permission was refused, appellant was retained in custody while a police officer went to an alderman to secure a search warrant.[2]

The warrant's probable cause section contained the following: "[T]he facts and circumstances tending to establish [the police officer's] belief that the [firearm is] situated at and in the [appellant's] vehicle are (inter alia) as follows: That on or about the day of            196   that witness [sic] have reported the weapons are carried by subject in the vehicle, a [vehicle of a certain type]."

In accordance with *Commonwealth v. Crawley*, 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), the suppression court admitted into evidence not only the probable cause section but also the sworn testimony given by

---

[1] The lower court opinion is reported at 90 Dauphin 349 (1969).

[2] No complaint is made about appellant's retention in custody. Apparently the arrest was not made as a pretext for the search. Compare *United States v. Harris*, 321 F. 2d 739, 741 (6 Cir. 1963).

the police officer to the alderman who issued the warrant.

The alderman testified at the suppression hearing. He said that a police officer came to him and said that "he had information that there was a gun in this car from reliable sources." The following questions and answers appear during the course of his testimony. "Q. Now, do you recall whether or not he told you who the reliable sources were? A. No. Q. Well, when you say no, you don't recall or he didn't tell you? A. I don't think I asked him. Q. Do you recall whether or not he told you anything about the reliable sources, that is, with respect to why he thought they were reliable? A. No, he didn't go into detail, except to say he had reliable information that there was a gun in the car."

The police officer also testified at the suppression hearing. His testimony was somewhat more detailed than the alderman's. He said that witnesses had told him they had talked with appellant. Allegedly, appellant had admitted to them that he carried a firearm in his car. The witnesses had, in fact, seen the firearm. The officer said, he told all of this to the alderman. In addition, he told the alderman "that there was a prior history of [appellant's] having carried firearms." He gave no specifics as to this prior history, however.

The question presented to this Court is whether the above testimony was sufficient to sustain a finding of probable cause so that the warrant could lawfully be issued.

The Fourth Amendment guarantees to citizens a right of privacy secure against governmental interference except upon a showing of probable cause. In order to assure that probable cause will not be lightly satisfied, we have required that it be judged by what "a neutral and detached magistrate" would decide. "[The Fourth Amendment's] protection consists in re-

quiring that [the] inference [of probable cause] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 14, 68 S. Ct. 367 (1948). See *United States v. Lefkowitz*, 285 U.S. 452, 52 S. Ct. 420 (1932). That intervening party, whether he be magistrate, commissioner, alderman, or judge, is the citizens best protection against unwarranted and unreasonable intrusions.

When an officer has gone to an alderman to secure a warrant, as the officer in this case did, the suppression judge's task, and ours in turn, is not usually very difficult. "In most instances, in reviewing the issuance of a warrant, we need only ascertain what facts were discovered by the police officer and sworn to before the [alderman], whether his testimony should have been given credence, and whether the credible facts were enough to satisfy the [requirement of "probable cause"]." *Commonwealth v. Tirpak*, 216 Pa. Superior Ct. 310, 263 A. 2d 917 (1970) (dissenting opinion). If such credible facts would warrant a man of reasonable caution in believing that a crime was committed and that evidence thereof was in a particular place, then a finding of probable cause will be supported. *Carroll v. United States*, 267 U.S. 132, 161, 45 S. Ct. 280 (1925).

A problem arises, however, "[w]hen the police officer has discovered little or nothing on his own but is relying upon information supplied by an informant. . . ." *Commonwealth v. Tirpak*, supra at 318. The problem arises because the informant is not before the alderman to subject his information to inquiry and his demeanor to review. Hence, the police officer must compensate for the missing informant by supplying the alderman with substantially what he would have had,

had the informant been present. See *Aguilar v. Texas,* 378 U.S. 108, 114, 84 S. Ct. 1509, 1514 (1964).

The suppression court's task, and ours in turn, in reviewing the alderman then becomes the following. "(1) We ascertain what facts were discovered by the informant. (2) We decide whether the police officer's testimony supports the belief that the informant was credible. (3) We then decide whether the credible facts (both the informant's and the police officer's) were enough to satisfy the [requirement of "probable cause"]." *Commonwealth v. Tirpak,* supra at 318. See *Jones v. United States,* 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960). In order to protect the Fourth Amendment right to privacy, we must be sure that these decisions are made (or in the permissible absence of a warrant could be made) by the neutral party. The police officer's conclusions without their underlying bases are insufficient.

Here, the facts discovered by the informants were that appellant had a firearm in his car. They had seen it, they said. If they were to be believed, their information was obtained reliably and was sufficient to constitute probable cause. *Spinelli v. United States,* 393 U.S. 410, 89 S. Ct. 584 (1969).

The question is, however, whether the informants were to be believed and what factors should the alderman have considered in passing on their credibility.

With respect to so-called police informers, one method of supporting their credibility is to disclose their history of informing, i.e., "what kind of information [the police officer] had received in the past from the informant, whether the information had led to arrests, and if so, how many, and whether the information had led to convictions, and if so, how many." *Commonwealth v. Tirpak,* supra at 319. With respect to these kinds of informants, who are often motivated by self-interest, this method of supporting credibility is to be

preferred. Cf. *Draper v. United States,* 358 U.S. 307, 79 S. Ct. 329 (1959).

With respect to persons who are casual observers and chance witnesses, other methods have equal validity. The circumstances of the contact may be evidence to support credibility, particularly as they relate to the time and place of the contact, the conditions under which it is made, the informant's demeanor, appearance, and conduct. If the police officer relates these things to the alderman or magistrate, the party issuing the warrant can then judge whether the circumstances and other considerations make falsehood unlikely. Essentially what is necessary is some tested foundation for accepting the officer's hearsay.[3] If the informant's information is self-incriminatory, this, too, may be evidence of credibility, since it is unlikely that one would falsely incriminate himself. *Commonwealth v. Somershoe,* 215 Pa. Superior Ct. 246, 252, 257 A. 2d 341, 344 (1969).

Another method of supporting the informant's credibility is if the police officer can corroborate his information to some extent. Thus, the police officer can tell the alderman or magistrate what facts he has discovered which make him suspect that a crime has been committed and that evidence thereof is in a particular place. The alderman or magistrate can then judge whether the officer's testimony, though insufficient by itself to constitute probable cause, leads to conclusions similar to those drawn from the informant's information.[4]

Here, however, none of the above methods was satisfactorily employed to support the informants' credi-

---

[3] Of course, it would be preferable to bring such informers themselves before the alderman or magistrate, if convenient. Certainly, in borderline cases, such direct testimony could be decisive.

[4] I would not, of course, limit the Commonwealth to the methods I have outlined above.

bility. The only supportive testimony given by the police officer to the alderman was his statement "that there was a prior history of having carried firearms." What that history was, the alderman was not told. Why that history made it likely that the informants were telling the truth, the alderman could not determine.

Because no testimony was offered with respect to the informants' credibility, their information could not be used to support the issuance of the search warrant. To do otherwise would subvert the Fourth Amendment protection afforded our privacy. It would permit the issuance of warrants on the word of nameless, unknown informers alone. In order not to abdicate our responsibility, we must have some basis for telling whether the informer is telling the truth. Some testimony consistent with the methods suggested in this opinion would be the kind which would afford citizens constitutional protection.

I would vacate judgment of sentence.

CERCONE, J., joins in this dissenting opinion.