419 A.2d 1213

COMMONWEALTH of Pennsylvania,

v.

John Rickie MATHIESON, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 15, 1979.

Filed April 18, 1980.

414

Timothy L. McNickle, Grove City, for appellant.

David B. Douds, Assistant District Attorney, Mercer, for Commonwealth, appellee.

Before CERCONE, President Judge, and MONTGOMERY and LIPEZ, JJ.

LIPEZ, Judge:

Appellant was found guilty, after a non–jury trial, of three counts of burglary.[1] The court below granted appellant's motion to arrest judgment on one of the counts (the evidence being insufficient), but imposed sentence on the remaining two. Since we agree that the affidavit contained in the application for the search warrant (in the execution of which incriminating evidence was seized from appellant's home) did not present to the issuing authority information sufficient to justify his issuing the warrant, we need not reach appellant's other assignment of error, viz., that the evidence was insufficient to allow conviction of the other two counts as well.[2]

This case arose out of the burglary of three summer cabins in Mercer County, Pennsylvania, in the course of which numerous items, including guns, appliances and camping equipment, were taken. In the section of the application for the search warrant detailing the facts on which the affiant, a local police officer, based his belief of probable cause, he stated, in relevant part:

1. 18 Pa. C.S. § 3502.

2. Appellant's pretrial motion to suppress was denied.

On 4 May 1977, a confidential informant who has given me information that has proven to be reliable in the past, gave me information concerning these burglaries. Informant states that on 2 May 1977, the informant was in the above described trailer rented by John Mathieson. and [sic] saw two items that were stolen in these burglaries, one being an Ithaca Featherweight .12 gauge shotgun, stolen from the Stanton burglary and the other item being a Sylvania portable black and white 19″ TV, stolen from the Newsome burglary. Informant advised me that statements were made to a second individual who does not want to be identified because he is fearful of his life. The second individual advised that around 1 May 1977, he was at the Mathieson trailer [sic] at that time, Mathieson, Ronald Bowers, R.D. # 1, Grove City, Pennsylvania, and William Stewart of R.D. # 1, Volant, who is not [sic; now] living with Mathieson, made statements that they committed these tow [sic] burglaries as well as other cottage burglaries that occurred in the area about this same time. Informant went on to relate that Mathieson was attempting to sell two guns from the Scranton burglary to a third individual who is a 21 year old white–male [sic] from the Volant area who also does not want to be identified because he is fearful of his life. On 5 May 1977, I interviewed the 21 year old Volant area person at his place of employment and he advised me that William Stewart a 17 year old juvenile (now living at the Mathieson trailer), came to his place of employment and attempted to sell him two guns stolen in the Stanton burglary. A few days prior to Stewart coming to his place of employment he states that he was at the Mathieson trailer and he saw a rifle and a pistol stolen at the Stanton burglary and the portable TV stolen in the Newsome burglary. He stated that Mathieson, Bowers and Stewart were at the trailer when he was there and all these made statements inplicating themselves in these two burglaries as well as other similar home burglaries [sic]

On 5 May 1977, I interviewed a Ronald William Baughman (Slug) in regards to these burglaries. Baughman

advised (Baughman lives in a home beside the Mathieson trailer) me he owns the trailer that Mathieson is living in and has rented it to him for the past two months for $100.00 a month. States that the Stewart boy is a ward of the Mercer County Court and is under his control. he [sic] receives monthly care payments for Stewart from Mercer County. He states that Stewart is a senior at Grove City High School and he permitted him to move into the trailer with Mathieson. He also advised me that at the present time, Mathieson, Bowers and Stewart are on a fishing trip at Pymatuning State Park and they are to be back Sunday 7 May 1977. He advised that he personally saw them load fishing equipment, sleeping bags, coleman lanterns, and stoves in a green 71 Plymouth operated by Mathieson and a red pickup truck operated by Bowers. Equipment similar to that loaded in these vehicles for the fishing trip were reported stolen from the Stanton and Newsome burglaries.

This mass of verbiage says, essentially, that the affiant received information from three persons: a confidential informant who, the officer stated, had given him reliable information in the past (hereinafter referred to as "Informant A"); "a 21 year old white–male [sic] from the Volant [Pa.] area" who also wished to remain anonymous (Informant B); and Baughman, appellant's landlord. Informant A received, and transmitted to the affiant, information from another confidential source (Informant AA). Except for Baughman, whose information lends the application no support, the affiant provided nothing more than the above hearsay.

"Under the Fourth Amendment, an officer may not properly issue a warrant to search a private dwelling unless he can find probable cause therefor from facts or circumstances presented to him under oath or affirmation." *Nathanson v. United States*, 290 U.S. 41, 47, 54 S.Ct. 11, 13, 78 L.Ed. 159, 162 (1933). Warrant applications grounded in hearsay must satisfy particular requirements intended to ensure that the hearsay is credible and the declarant reliable:

The test for determining the validity of a search warrant is that pronounced in the leading case of *Aguilar v. Texas*, 378 U.S. 108 [, 84 S.Ct. 1509, 12 L.Ed.2d 723] (1964) . . . [sic] an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant provided the magistrate is informed of some of the underlying circumstances from which the *officer* concludes that the informant, whose identity need not be disclosed, is credible or his information reliable. Thus briefly in recapitulating, Aguilar sets forth two requirements which must be met in the affidavit before a search warrant can be properly issued: (1) the setting forth of underlying circumstances from which the *informer* concludes the items in issue are where he said they were and, (2) the setting forth [of] underlying circumstances from which the *officer* affiant concludes that the informer is credible or his information reliable.

*Commonwealth v. Ambers*, 225 Pa.Super. 381, 384–85, 310 A.2d 347, 350 (1973), *quoting Commonwealth v. Somershoe*, 215 Pa.Super. 246, 249–50, 257 A.2d 341, 343 (1969) (emphasis in original). With regard to the above–stated second requirement,

[i]n *Commonwealth v. Ambers*, 225 Pa.Super. 381, 386, 310 A.2d 347, 350 (1973), we delineated four criteria to be considered by the issuing authority in his attempt to determine whether a substantial basis exists for crediting the informant's tip: "(1) Did the informant give prior reliable information? (2) Was the informant's story corroborated by any other sources? (3) Were the informant's statements a declaration against [penal] interest? (4) Does the defendant's reputation support the informant's tip?"

*Commonwealth v. Herron*, 243 Pa.Super. 319, 334, 365 A.2d 871, 878 (1976); *see United States v. Harris*, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *Commonwealth v. Falk*, 221 Pa.Super. 43, 46–47, 290 A.2d 125, 126–27 (1972). The affiant need not satisfy the issuing authority of all four of the above factors, *Commonwealth v. Herron*, supra, 243

Pa.Super. at 334, 365 A.2d at 878; we conclude, however, that the warrant in the case before us was improperly issued because the affidavit contained in the application therefor satisfies none of them.

The officer–affiant's mere assertion that Informant A "has given me information that has proven to be reliable in the past" is insufficient to support a belief in Informant A's credibility or in the reliability of his information. *Commonwealth v. Hall*, 451 Pa. 201, 207, 302 A.2d 342, 345 (1973); *Commonwealth v. Herron*, supra, 243 Pa.Super. at 333, 365 A.2d at 877–78; *Commonwealth v. Billock*, 221 Pa.Super. 441, 289 A.2d 749 (1972).[3] We cannot find corroboration of Informant A's statements in those of Informant B, because the affiant asserted no grounds whatever for belief in the accuracy thereof. There is, likewise, no indication that the statements of either informant were admissions against penal interest, or that their information found support in appellant's reputation.

The statements made by Informant AA to Informant A, who relayed them to the affiant (and which thus constitute hearsay within hearsay), neither corroborate any other tips nor serve in themselves as a basis for finding probable cause, since the reliability of Informant AA was never shown or even asserted. *See United States v. Roth*, 391 F.2d 507, 510–11 (7th Cir. 1967); *Commonwealth v. Davis*, 225 Pa.Super. 242, 244 n.2, 310 A.2d 334, 336 n.2 (1973). *Commonwealth v. Samuels*, 235 Pa.Super. 192, 340 A.2d 880 (1975), cited by the court below, is distinguishable by the extensive

3. In *Billock*, this court approved the suggestion of Judge Hoffman, contained in his dissenting opinions in two previous cases, specifying what additional information is needed:

> With respect to so–called police informers, one method of supporting their credibility is to disclose their history of informing, i. e., "what kind of information [the police officer] had received in the past from the informant, whether the information had led to arrests, and if so, how many, and whether the information had led to convictions, and if so, how many."

*Commonwealth v. Conner*, 217 Pa.Super. 85, 89, 266 A.2d 784, 786 (1970) (Hoffman, J., dissenting), *quoting Commonwealth v. Tirpak*, 216 Pa.Super. 310, 319, 263 A.2d 917, 922 (1970) (Hoffman, J., dissenting).

corroborative evidence provided by an investigation conducted by the police prior to their requesting a search warrant. The information provided by Baughman, appellant's landlord, does not consist of particular descriptions of unique items; rather, it shows only that, on a certain date, after the burglaries had occurred, appellant was in possession of various items of camping and fishing equipment. No inference can be drawn therefrom that *that* equipment had been stolen by appellant from the burglarized cabins.

Since the issuing authority, for the above reasons, did not have a substantial basis for crediting the hearsay contained in the affidavit, the issuance of the warrant was illegal and the evidence should have been suppressed.

Judgments of sentence reversed, and case remanded for new trial.