William A. FOSTER, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18898.

United States Court of Appeals
Fifth Circuit.

Nov. 29, 1961.

Rehearing Denied Jan. 2, 1962.

Walter G. Arnold, Jacksonville, Fla.,
for appellant.

Donald C. Lehman, Asst. U. S. Atty.,
Jacksonville, Fla., Edward F. Board-
man, U. S. Atty., Southern Dist. of Flor-
ida, Miami, Fla., for appellee.

Before TUTTLE, Chief Judge, and
JONES and WISDOM, Circuit Judges.

TUTTLE, Chief Judge.

This appeal attacks the conviction and
sentence of appellant for violation of Ti-
tle 18 U.S.C.A. § 111, dealing with forci-
bly assaulting, resisting, opposing, im-
peding, intimidating or interfering with
United States officials while engaged in
the performance of their official duties.
The principal ground of the appeal is the
contention that the government failed
in its effort to prove that Special Agents
William Johnson and Thomas J. Walsh,
of the Federal Bureau of Investigation,
were, when resisted and impeded and in-
timidated, engaged in the performance
of their official duties. The basis of
this attack is the allegation by the ap-
pellant that when he did the acts com-
plained of towards the agents they were
illegally on his premises and were thus
not, in legal contemplation, engaged in
the performance of their official duty.

On the evidence introduced on the
trial of the appellant, the jury was au-
thorized to find that the following oc-
curred on the night of February 10,
1959, near Jacksonville, Florida: The
Special Agents, at 2:30 P.M., went to
8265 Hogan Road, Duval County, Flor-
ida, for the purpose of questioning Fos-
ter in connection with an official investi-
gation by the Federal Bureau of Inves-
tigation. The agents parked their auto-
mobile facing outward on a roadway
running alongside the house, but some
distance from it. The automobile had
Florida license plates and did not have
any United States government identifi-
cation. The two agents walked up on
the front steps of the property of Fos-
ter's parents for the purpose of question-
ing him. Although a man of thirty-five
to forty-five years of age he stayed at
his parents' home when in Jacksonville.

His normal employment was as an engineer on board dredges and ships. The two agents were in business suits and ties and they were unarmed. They walked up to the front screen door to the porch of the house and stood on the steps while they rang the doorbell and knocked. The appellant came to the center of the porch and Agent Johnson asked him, "Are you Bill Foster?" Without answering the question, appellant answered, "Who the hell are you?" Johnson then gave his name and stated that they were Special Agents of the Federal Bureau of Investigation. Thereupon the appellant, with considerable profanity, ordered the agents to "get the hell from the property." Mr. Johnson testified that he then stated to Foster that they only wanted to talk to him a couple of minutes. Whereupon appellant said, "Well, it's not going to take that long for me to do what I am going to do," and "I'll teach you to come around and bother me." The appellant immediately went to the living room from the porch and reached for a rifle and "racked the action of the rifle," pointing it in the direction of Johnson and Walsh. One agent testified that it looked as though it was pointed directly at his head and the other testified that he was fearful for his life resulting from this threat. Walsh told appellant that they were with the F. B. I. and on official business and asked the appellant to put down the gun. At this point Foster's father, William A. Foster, Sr., came to the porch, shouted to the son to put down the gun and asked the agents what their business was. Whereupon they told him who they were and that they wanted to talk to his son. The appellant then put down the rifle and came to the door, telling the agents to get off the porch or he would kick or throw them off. Walsh told the appellant not to come through the door or "someone was liable to get hurt." The appellant picked up the rifle the second time and ordered the agents off the property. Thereupon they turned their backs on the appellant and walked from the house to the automobile and drove off. The agents had no opportunity to show their credentials without, as they said, fearing that appellant would react violently to their reaching to their inside pockets. The entire occurrence took place within two or three minutes.

The same afternoon a federal warrant was issued for the arrest of appellant for violating Section 111 of Title 18, U.S. C.A. Johnson and Walsh, together with a number of other agents surrounded the house at 8:30 in the evening, arrested Foster and searched the house. The agents showed the warrant and their credentials at the time they arrested him. He was handcuffed, and in spite of a vigorous struggle, the agents carried him from the property and placed him in an automobile and drove him to a county jail. The indictment did not charge any violation of the federal statute based on appellant's belligerent actions at the time of or following his arrest. The only violation charged was the appellant's actions during the afternoon appearance of agents Johnson and Walsh.

Appellant's contention that the agents could not, in legal contemplation, be engaging in the performance of their official duties at the time they were threatened by Foster, is based largely upon matters that occurred in October, 1958. At that time two other special agents went to the same address, identified themselves and asked him some questions as a part of their investigation of the bombing of a Jewish synagogue in Atlanta on October 12, 1958. On this occasion Foster told the agents that he did not care to be interviewed, that he had nothing to tell them. Again, on November 6th the same two agents returned to interview Foster; again with considerable profanity he refused to answer any questions and told them to get off the property.

■ Appellant contends here that there could be no proper entry by the F. B. I. agents on the property of Foster's parents for the purpose of interviewing him on February 10, 1959, after he had told them in October and November that he did not care to be questioned

further. In any event, appellant says the agents should have left the premises before Foster had occasion to threaten them with the gun. We agree with the trial court that the question whether at the moment of Foster's threatening the agents they were engaged in a proper and legitimate function pursuing their official duties is a question of fact for the jury.

Appellant refers us to no decided case in which a court was held that a failure to depart the premises in a period of time as short as that which elapsed between Foster's initial response to the agents' inquiry and his threatening them with a gun converts what would otherwise be a justifiable act into a trespass. Nor is there cited any authority for the proposition that as a matter of law it would be a trespass for the agents to proceed to the front door of the Foster residence merely because Foster, Jr. had previously told other agents to leave the premises. We proceed, therefore, on the premise that the original approach, the knocking at the door, the inquiry of appellant as to his identity, were all actions which were protected under the principle that "when the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable." See Giacona v. United States, 5 Cir., 257 F.2d 450, 456, and see 52 Am.Jur., Trespass, Sec. 41.

The narrow question then arises whether the period of time, variously testified to as being from a few seconds to a minute, during which one of the agents made one further effort to identify himself to Foster and to request a brief audience with him, and to enable Foster to turn and walk to the front door and pick up the gun and aim it at the agents, constituted a sufficient lapse of time so that what had theretofore been a legal act of standing on the front steps was converted into a trespass. Obviously once the gun was pointed at the agents their continued presence, while expostulating with Foster, rather than turning their backs on the gun and departing, could not of itself have changed the quality of the threat already made when Foster pointed the gun at them in the first place.

The appellant seeks to equate what he characterizes as a trespass resulting from the agents' failure to turn and leave without even atempting to identify themselves with an arrest without a warrant or an unreasonable search or seizure of a home without a search warrant. As has been pointed out by this Court in the Giacona case, supra, there is a clear distinction between a simple trespass upon land and an unreasonable search of a person or his house or an unreasonable seizure of his papers and effects as protected against by the IV Amendment to the Federal Constitution. In this connection we think the language of Mr. Justice Holmes is apposite when, speaking for the Supreme Court in Hester v. United States, 265 U.S. 57, 44 S. Ct. 445, 446, 68 L.Ed. 898, he said:

> "The special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects' is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl., Comm. 223, 225, 226."

So, too, is there a clear distinction between the acts that are done by an officer while committing an unreasonable search or effecting an arrest without a warrant and the acts of an officer who may be committing a simple trespass on land. Thus, this Court has held that it is not unlawful to resist an officer who is conducting an arrest without a proper arrest warrant, Brown v. United States, 5 Cir., 47 F.2d 681, or a search based on an illegal search warrant or without a warrant, Sparks v. United States, 6 Cir., 90 F.2d 61; but as indicated in the Giacona case we have treated a simple trespass differently.

Moreover, we believe that under all of the facts outlined above, it was permissible for the jury to find that up to the time that Foster threatened the officers with the gun they had not acted in such

a manner as to cause them to become trespassers.

The appellant makes the further point that the trial court abused its discretion in not granting a continuance upon appellant's motion during the course of the trial in order to meet testimony that he claimed took him by surprise. As has been set out above, the testimony of the agents was that they were threatened by a gun in the hands of appellant. When the latter took the stand in his own defense he denied that he had a gun at the residence, or that he threatened the agents with any weapon whatever. Thereafter, on rebuttal, two government witnesses testified that while at the Duval County jail the night of the arrest, appellant telephoned to someone and in the course of his conversation he said, "You'll never find the gun, I have thrown it in the river." Another witness testified that he was at the Foster's residence when appellant's father received a telephone call after the arrest, purportedly from appellant, and that Mr. Foster turned the telephone receiver over to Agent Walsh. Walsh testified that appellant answered his question as to what he had done with the rifle by saying he had thrown it into the river, and when asked what river, he said, "That's for you to find out." Upon receipt of such testimony in evidence, appellant moved that the case be continued for four days, over the week end, because he wished to call an attorney, who was then out of the city, by whom he intended to prove that a telephone call made from the jail had been made to the attorney. Both Foster and his father testified that no such conversation occurred. Of course, the attorney could not have testified as to whether such conversation had actually occurred. His testimony, therefore, was collateral in the sense that it was intended to support Foster's other testimony that he had made only one telephone call, which call was made to the lawyer.

■■ Undoubtedly the trial court has broad discretion with respect to the granting of a continuance to prevent unfair results flowing from surprise arising during the trial. We think that since the proposed evidence was on a collateral issue and did not touch directly on a crucial point in the trial, the decision of the trial court in denying the motion for continuance was not an abuse of discretion.

The judgment is

Affirmed.