**UNITED STATES of America**

**v.**

**Ernest Earl STERLING.**

**Crim. No. 65–117.**

United States District Court
W. D. Pennsylvania.

Aug. 13, 1965.

Martin M. Sheinman, Pittsburgh, Pa., for defendant.

James P. McKenna, Jr., Asst. U. S. Atty., Gustave Diamond, U. S. Atty., for Government.

DUMBAULD, District Judge.

Petitioner, Ernest Earl Sterling, long a known suspect to alcohol tax enforcement officers (and a convicted violator), seeks to suppress evidence seized in his garage pursuant to a search warrant. The items include two large tanks, dug up from beneath the surface level of the garage, and over a dozen plastic jugs or containers.

An enforcement officer, Stanley Sams, knowing of Sterling's reputation among the enforcement group and also long acquainted with him personally, was driving along route 837 near Clairton on another mission when he saw Sterling come out of a dead end street on which he lived, which street was of interest to the revenue officers, driving a car which was also an object of scrutiny. Sterling pulled out in front of Sams and then turned in to the garage on his residence property, which is reached by a driveway coming off from 837. Sams drove on, turned around, parked his government car, and lay on the ground on a piece of undeveloped, hilly, vacant land adjacent to Sterling's residence property. From this coign of vantage Sams saw a man, not identifiable at the moment, taking objects from the back seat of the car and setting them on the garage floor. Later he heard a gurgling sound, as of liquid being poured out, and smelled the distinctive odor of moonshine liquor. In the experience of Sams he has never known such liquor to be taxpaid or sold in the State Liquor Stores of this area.

Possession being an offense under 26 U.S.C. § 5604(a) Sams concluded that a felony was being committed in his presence, and walked toward the open garage door with the intent of apprehending the offender. When he got close enough he recognized Sterling and Sterling asked who it was. Sams replied "It's Stanley the federal man", that being the name by which he was known to Sterling. Further conversation ensued. Sams had not entered the garage, but was looking down at the floor, being surprised to see that the moonshine containers were being emptied on the ground. Sams had not been certain what the gurgling sound signified. One alternative was that gallon jugs were being loaded for transportation out of the garage, in accordance with the custom. Another possibility was that a supply was being put into underground tanks (the agents had had rumors that Sterling had such equipment on his premises).

While Sams had his eyes off Sterling, Sterling struck him and knocked him to the ground. Sams got to his feet and told Sterling he was crazy to strike a federal officer who was engaged in the performance of official duties. Sterling then threatened to kill Sams, and struck Sams again, rendering him temporarily unconscious on the driveway. Sams then heard the motor of the car being started and succeeded in rolling out of the way of the vehicle as Sterling backed out of the garage and fled. Sams warned Sterling that "We'll be back to get you" but did not draw the pistol he was carrying or attempt to prevent Sterling's flight.

Sams succeeded in reaching his parked car, driving to a phone booth, requesting the Clairton police to put Sterling's property under surveillance until federal liquor agents could arrive, and activating two such agents, and then driving to the Homestead hospital for treatment.

Stephen Adler, one of the enforcement officers Sams had called, interviewed Sams at the hospital, and on the following day procured from United States Commissioner Alex L. McNaugher a search warrant. Meanwhile Sterling had surrendered at the Clairton police station. Adler took the warrant to Sterling's house, and found no one home. He then joined other enforcement officers who were in their cars along the road keeping the premises under surveillance. A search was then made of the garage. Fifteen one-gallon plastic jugs, some of which were moist with the odor of moonshine were found. Also two sets of pipes were found, some of which smelled of moonshine. Digging disclosed a 250-gallon tank containing 104 gallons of moonshine. A tank of smaller capacity was empty.

The foregoing facts disclose that the evidence which Sterling seeks to suppress was duly obtained pursuant to a valid search warrant. Sterling seeks to go behind the warrant and establish that the whole search was the "fruit of a poisonous tree". However, the testimony shows that the officer executing the warrant (as well as Sams) had long had a tip from a reliable informer regarding the tanks, and the warrant could stand on the basis of independent information unconnected with the allegedly poisonous tree.

But we find that the fruit of the tree involved here is edible and free of venom.

Sterling's *point d'appui* in the attempted proof of unreasonable search and seizure is the contention that Sams committed a trespass on private property when he stationed himself on the uncultivated and unoccupied terrain from which he watched the activities under way in Sterling's garage through the open garage door. Admittedly Sams was off the public highway on vacant land, which doubtless belonged to someone.

■ Unless it belonged to Sterling, he is without standing to assert the owner's rights. Premier Pabst Sales Co. v. Grosscup, 298 U.S. 226, 227, 56 S.Ct. 754, 80 L. Ed. 1155 (1936) ; Ex parte Albert Levitt, 302 U.S. 633, 638, 58 S.Ct. 1, 82 L.Ed. 493 (1937) ; Tileston v. Ullman, 318 U.S. 44, 46, 63 S.Ct. 493, 87 L.Ed. 603 (1943) ; Doremus v. Bd. of Education, 342 U.S. 429, 433–434, 72 S.Ct. 394, 96 L.Ed. 475 (1952) ; United States v. Raines, 362 U. S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960) ; Ker v. State of California, 374 U.S. 23, 38, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).

There was no proof as to the precise dimensions of Sterling's property in relation to the adjacent terrain.

■ Even if it was Sterling's land on which Sams was stationed, we believe that an inadvertent and unconscious trespass is not enough to make the enforcement activities of Sams an *unreasonable* search. It must be remembered that the Fourth Amendment does not prohibit *all* searches, but only "unreasonable searches and seizures".

■ If the enforcement officer reasonably believes that he is not trespassing on the suspect's property, his acts are not unreasonable even if he technically violates the unmarked boundary line and subjects himself to the venerable remedy of trespass *quare clausum fregit*.

This is particularly true if, as here, the locale involved is unfenced, unmarked, unoccupied, undeveloped countryside in a state of nature.

■ A simple trespass without more will not invalidate an otherwise proper search and seizure. United States v. Lewis, 227 F.Supp. 433, 436 (S.D.N.Y. 1964) ; United States v. Minker, 312 F. 2d 632, 634 (C.A. 3, 1963).

■ Apart from the issue of trespass, of course, the case clearly establishes probable cause under the established federal standards. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d

134 (1959); United States v. Sala, 209 F.Supp. 956, 958 (W.D.Pa.1962); United States v. Moriarty, 327 F.2d 345, 347–348 (C.A. 3, 1964).

The motion to suppress is denied.

The foregoing opinion shall be deemed to embody the Court's findings of fact and conclusions of law.