**UNITED STATES of America, Appellee,**

v.

**Ernest Earl STERLING, Appellant.**

**No. 15713.**

United States Court of Appeals Third Circuit.

Argued Oct. 6, 1966.

Decided Dec. 15, 1966.

Martin M. Sheinman, Pittsburgh, Pa. (Morris, Safier & Teitelbaum, Pittsburgh, Pa., on the brief), for appellant.

James P. McKenna, Jr., Asst. U. S. Atty., Pittsburgh, Pa. (Gustave Diamond U. S. Atty., Pittsburgh, Pa., on the brief), for appellee.

Before FORMAN, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Circuit Judge.

The appellant ("defendant") was convicted by a jury of possessing distilled spirits without the required stamp, in violation of 26 U.S.C. § 5205(a) (2), and contrary to 26 U.S.C. § 5604(a) (1), and of assaulting an officer of the United States in violation of 18 U.S.C. § 111.

As stated in defendant's brief, "the basis for [the] appeal in this case is that [the] motion to suppress should have been granted." The court below denied defendant's pre-trial motion to suppress evidence seized pursuant to a search warrant. The first issue is whether the facts disclosed at the hearing on the mo-

tion to suppress evidence demonstrate that the search warrant was validly issued. We proceed to summarize them as found by the court below.

On January 19, 1965, Sams, a government agent, while driving along a road at night on another mission, saw defendant pull out in front of him from a side street. Because he knew defendant to be a previous violator of liquor laws and because he had heard from a usually reliable source that defendant might have underground tanks on his property for the storage of unstamped moonshine whiskey, Sams decided to investigate. He watched defendant pull into his driveway. He drove on past defendant's house and turned around, drove back past defendant's house again, parked his car on a side street a block away, walked back past defendant's house, and then stepped a few feet from the sidewalk onto a piece of vacant land (the ownership of which is not shown in this record) adjacent to defendant's property and laid down among some shrubs. From this vantage point Sams saw the car defendant had driven into his separate garage and also observed a man moving about inside the open door. Although the nearby street lights and a light from the house plus whatever natural lighting there may have been did not permit Sams to be sure that the man approximately fifteen yards distant was the defendant, he could see objects being taken from the car and placed on the garage floor, could hear a loud gurgling noise, and could smell the distinctive odor of moonshine whiskey.

After observing the man's activity for ten minutes Sams stood up and walked toward the garage with the intention of placing him under arrest. Upon recognizing the defendant, Sams identified himself and asked what was going on. Defendant replied that he was not doing anything. During a conversation which lasted five or six minutes Sams from outside observed liquid being poured into an opening in the garage floor. Up to this point Sams did not announce that the defendant was under arrest.

Suddenly defendant struck Sams, knocking him to the ground. As he struggled to his feet Sams told defendant that he was crazy to strike a federal officer and that he would have to be taken into custody. Defendant responded by striking Sams again, rendering him temporarily unconscious in the driveway. Sams rolled out of the way just before defendant backed the car out into the street and drove off. Later at the hospital Sams related the incident to a fellow agent who signed the affidavit upon which the search warrant was issued.[1]

---

1. The affidavit read:

"That he (has reason to believe) that (on the premises known as) the Ernest E. Sterling residence, a one story gray cinder block dwelling house with an outside one car garage at 110 Lincoln Way, Clairton, Allegheny County in the Western District of Pennsylvania there is now being concealed certain property, namely non-tax paid distilled spirits the immediate containers thereof which do not bear tax stamps according to law which are in violation of Section 5604(a) (1), 1954, I.R.C.

"And that the facts tending to establish the foregoing grounds for issuance of a Search Warrant are as follows:

"On January 19, 1965 while at the Homestead Hospital, Homestead, Pennsylvania, I was told by Area Supervisor Stanley S. Sams that while he was observing 110 Lincoln Way, Clairton, Pennsylvania, the residence of Ernest E. Sterling a previously convicted violator of the Internal Revenue Liquor Laws, he saw a 1956 gray and white Buick sedan, Pennsylvania license 789–56H pull into Sterling's garage driveway. This was about 9:30 PM. This Buick sedan is registered to Elijah Chapman, 210 State Street, Clairton, a known associate of Sterling's.

"Sams stated that a few minutes after the Buick had been pulled into the driveway he could hear the sound of liquid being poured and could smell a strong odor of moonshine whiskey coming from the garage.

"Sams said that he approached the open double doors of the garage and saw a man that he recognized as Ernest Sterling pouring liquid from a light colored container.

"Sams stated that he said, 'Hello Ernest, this is Stanley, the Federal man'. Sterling replied, 'What do you want?'

The next morning the search warrant was served. Two large tanks were dug up from under the garage, one of which contained 104 gallons of unstamped liquor. Over a dozen plastic jugs were also seized.

■ It is clear from a reading of the affidavit that the agent's knowledge concerning the defendant when combined with what he saw, heard, and smelled before leaving his vantage point on the vacant land was legally sufficient to support the "probable cause" prerequisite to the issuance of the warrant.[2] Recognizing that the absence of an established trespass upon defendant's property at this time may not in and of itself be determinative of the reasonableness of the search, see McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948); Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), we find nothing which might be said to have been constitutionally unreasonable in the agent's actions in so observing defendant. Certainly defendant cannot complain that, solely because of a possible technical trespass to property not shown to be owned by him, the information which the agent acquired through observations before walking toward the garage was illegally obtained. United States v. Romano, 330 F.2d 566 (2nd Cir. 1964), cert. den. 380 U.S. 942, 85 S.Ct. 1020, 13 L.Ed.2d 961, reh. den. 381 U.S. 921, 85 S.Ct. 1530, 14 L.Ed.2d 441, aff. 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210. We, of course, need not decide whether our decision would be different had the evidence shown that the agent made these observations while a trespasser on defendant's property.

■ The affidavit also included information which the agent procured after walking toward defendant's garage, including the positive identification of defendant and the observation that liquid was being poured into an opening in the garage floor. The affidavit in addition described the assault. While we are disposed to believe that the agent's entry on to the property admittedly owned by defendant was justified under the circumstances, let us assume that the entry was illegal and that the information obtained at that time was improperly included in the affidavit for the search warrant. Nevertheless, the law is quite clear that the inclusion of illegally obtained evidence does not vitiate a search warrant which is otherwise validly issued upon probable cause reflected in the affidavit and based on proper sources. Clay v. United States, 246 F.2d 298 (5th Cir. 1957), cert. den. 355 U.S. 863, 78 S.Ct. 96, 2 L.Ed.2d 69; Chin Kay v. United States, 311 F.2d 317 (9th Cir. 1963). Here the evidence sufficient to support "probable cause" was not procured as a result of the allegedly illegal activity, and thus could not be said to be the fruit of a poisoned tree. Nor could the allegedly improper material in the affidavit have affected the scope of the warrant issued. We believe that the following language from United States v. Epstein, 240 F.Supp. 80 (D.C.S.D.N.Y. 1965), is pertinent to the present case:

> "This is not to say that law enforcement officials may with impunity include impermissible matter in applications for search warrants in the hope that a Commissioner might thereby be persuaded to find probable cause where otherwise none exists or the issue is in doubt; * * *. But in a case like the present one, where the challenged matter is merely cumulative, no such danger is run and the warrant may be upheld." 240 F.Supp. 80, 83.

---

Sams then said, 'What are you pouring Ernest?'

"Sterling then struck Sams a hard blow in the face knocking him back onto the driveway ground. Sterling then got into the 1956 Buick and drove to a telephone and called me and reported the incident. Sams then went to the Homestead Hospital for treatment of his cut and bruised face where he was detained."

2. The lower court's alternative ground for upholding the search warrant was based on information not in the affidavit. Such an approach is legally unacceptable. The affidavit must be the exclusive support for the warrant.

We conclude that the search warrant was legally issued.

██ We turn to the second issue concerning the assault. Not having the trial transcript before us, we assume along with counsel for both sides that the evidence presented at trial relevant to the present issue was essentially the same as that adduced at the hearing on the motion to suppress. We find that the agent when he approached the defendant's garage, having heard of his reputation and having observed suspicious activity from an adjacent lot, was acting in the performance of official duties. He engaged the defendant in conversation without attempting to apprehend him or to break into any structures on his property. "When the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable". Giacona v. United States 257 F.2d 450, 456 (5th Cir. 1958). This issue was for the jury. Foster v. United States, 296 F.2d 65 (5th Cir. 1962). There is no evidence that the agent refused to leave defendant's property after defendant told him to do so.

██ Although the agent testified that he approached defendant with the intention to arrest him, he did not immediately do so. Nevertheless, it must have been obvious to defendant that the agent was present in an official capacity and not as an ordinary trespasser. The agent did not engage in an unreasonable search prior to the attempted arrest. Thus, there was no arguable basis for defendant's assault. The defendant's conviction for assault of a federal officer was proper.

The judgment is affirmed.

Judge Freedman concurs in the result.

FORMAN, Circuit Judge (concurring).

I am in agreement with the opinion of Judge Seitz insofar as it holds that Agent Sams's surveillance of the appellant's garage was a reasonable police practice. However, I also believe that the subsequent entry and observation by Agent Sams were consonant with the requirements of the Fourth Amendment.

It was from a prone position at the edge of the driveway that Agent Sams was able to see a man in the garage removing objects from the car and later to smell the odor of moonshine liquor and to hear the gurgling sound of liquid being poured. He had personal knowledge of appellant's prior record of liquor violations; he was in possession of information from a reliable informer that the appellant was involved in yet more violations. Although he could not visually identify the person moving about in the garage as the same person about whom he had the information, he was justified in so inferring from the facts that he had just seen the appellant go into the driveway in an automobile and that this was known to him to be appellant's home and garage. He recognized the automobile being used by the appellant as belonging to another liquor law violator. These facts constituted probable cause for Agent Sams's belief that a felony was being committed in his presence.[1]

With the appellant in unobstructed access to Agent Sams and dealing in mobile commodities with the means of ready transportation at hand, Agent Sams was justified in making immediate entry to arrest in accordance with his authority granted by 26 U.S.C. § 7608(b) (2) (B). His entry peaceable and his presence lawful, "the observation of what was then

1. United States v. Price, 345 F.2d 256 (2 Cir.), cert. den. 382 U.S. 949, 86 S.Ct. 404, 15 L.Ed.2d 357 (1965); see United States v. Draper, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). The grounds for such belief were patently more compelling than those in United States v. Mullin, 329 F.2d 295 (4 Cir. 1964), cited by appellant, where it does not appear that the agents had prior reliable information as to the defendants' involvement, nor did their observation reveal facts as unambiguous as those involved here. This is not a marginal case in which the agent should have deferred to the judgment of a magistrate. See United States v. Ventresca, 380 U.S. 102, 106, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965), citing United States v. Jones, 362 U.S. 257, 270, 80 S.Ct. 725, 4 L.Ed.2d 697 (1961).

and there immediately apparent could not in itself be a wrong." [2]

It appears, however, that no formal arrest was made. This was due, of course, for the most part to Mr. Sterling's assault on Agent Sams. In these circumstances the lack of a formal arrest does not negative the District Court's finding that Agent Sams entered for the purpose of arrest. Moreover, the last item relating to liquor violations in the affidavit was Agent Sams' identification of Mr. Sterling as the man whom he saw pouring liquid from the containers. This identification occurred during Agent Sams's approach to the garage at a distance of five or six yards, before any conversation took place and before Agent Sams might have been required to place the appellant under formal arrest. [3] During a short exchange that took place when Agent Sams first arrived a few feet from the entrance to the garage, he saw the containers lying at the appellant's feet which was the basis for the description of the containers as being "light colored." These observations, however, were made as a natural result of Agent Sams's presence, which was in turn justified by probable cause existing independently of any subsequent observations. [4] Finally, the facts concerning Mr. Sterling's assault on Agent Sams, pertinent to the issuance of the warrant only to the extent that they inferentially showed Mr. Sterling's guilty reactions, cannot be deemed evidence obtained through an illegal search of premises, when indeed the officer was lawfully present there. This is simply not a case where an officer entered ostensibly to arrest but actually to search for evidence to obtain cause for arrest. [5]

The information supporting the affidavit was obtained by constitutionally reasonable activity. It follows that the warrant was validly issued and the motion to suppress was properly denied. Hence, I find it unnecessary to explore the validity of the search warrant on the assumption that the entry and subsequent observations were illegal.

Because Agent Sams's presence was lawful, and the evidence shows that the appellant was made aware of his official capacity, I am in agreement with Judge Seitz's conclusion that there is no arguable basis upon which the assault of Agent Sams may be defended.

2. United States v. Horton, 328 F.2d 132, 135 (3 Cir. 1963).

3. A recapitulation of Agent Sams's testimony discloses that he left his standpoint fifteen yards from the garage and walked toward the appellant. At a point five or six yards up the driveway toward the garage, he recognized the man therein as the appellant. While Agent Sams walked closer to the garage, the following exchange ensued:
Agent Sams: "Hello, Ernie."
Mr. Sterling: "Who is it?"
Agent Sams: "It's Stanley, the federal man."
Agent Sams stopped a few feet from the entrance to the garage. Mr. Sterling stood slightly inside the garage and above the bottles, which were gurgling into the ground. This conversation occurred:
Agent Sams: "What are you doing?"
Mr. Sterling: "I'm not doing anything."
Agent Sams: "Ernie, I can smell the moonshine."
Mr. Sterling: "Oh, it's nothing."

It was during the foregoing conversation that Agent Sams saw six or seven light colored plastic gallon containers at Mr. Sterling's feet and that liquid was pouring from two of them into an opening in the floor. Thus Agent Sams continued:
"Well, Ernie, I see you have moonshine there."
Mr. Sterling: "No, I don't have anything."
Surprised at seeing the liquid running into the floor, Agent Sams, still standing in the driveway, leaned forward, taking his eyes off Mr. Sterling but not entering the garage. Mr. Sterling then struck Agent Sams, knocking him to the ground. Agent Sams arose but was struck again, rendered momentarily unconscious, during which time Mr. Sterling drove off in the automobile.

4. See Holt v. Simpson, 340 F.2d 853 (7 Cir. 1965).

5. See generally, Annotation, 89 A.L.R.2d 715 (1963).