**UNITED STATES of America ex rel.
Gilbert John GAUGLER, Appellant,**

v.

**Joseph BRIERLEY, Superintendent, State
Correctional Institution at Pittsburgh.**

No. 72–1262.

United States Court of Appeals,
Third Circuit.

Argued Oct. 31, 1972.

Decided April 16, 1973.

H. David Rothman, Pittsburgh, Pa., for appellant.

J. Kent Culley, Asst. Dist. Atty., Appeals Section, Robert W. Duggan, Carol Mary Los, J. Kent Culley, Pittsburgh, Pa., for appellee.

Before KALODNER, ADAMS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

The relator Gaugler is now serving a two to four year sentence imposed by a Pennsylvania court following his conviction for burglary and larceny.

On July 16, 1971, fifteen days after he commenced serving his sentence, the relator filed a petition for a writ of habeas corpus in the District Court challenging the validity of his conviction and confinement on the ground that the state trial court had erred in not suppressing evidence which he claims was obtained by use of alleged illegal search warrants.

The District Court, after reviewing the state trial records, ordered that an evidentiary hearing take place. At that hearing, the state adduced testimony to the effect that the applicant for the challenged search warrants had, under oath, made allegations to the Justice of the Peace who had issued the warrants which fully supported their issuance.

The District Court denied the relator's petition for habeas corpus relief.

The relator's primary contention on this appeal is that the District Court erred in allowing testimony in supplementation of the bare averments of the affidavit filed in support of the application for the warrants. He concedes that under Pennsylvania law sworn oral testimony before a magistrate may be considered along with the facts recited in the affidavit for a search warrant in determining the sufficiency of the

facts before the magistrate to justify his finding of probable cause. Commonwealth v. Crawley, 209 Pa.Super. 70, 223 A.2d 885 (1966), aff'd per curiam, 432 Pa. 627, 247 A.2d 226 (1968). The relator, however, urges that Commonwealth v. Crawley, *supra,* "is unconstitutional because it supplies no guidelines or standards" for its administration.

The background facts necessary to our disposition may be stated as follows:

On October 2, 1966, the home of Clyde W. Williams in Gibsonia, Allegheny County, Pennsylvania, was burglarized of some $1,500 personal property. On or about October 16, 1966, the home of Mr. and Mrs. Eugene Connelly, located in the Penn Hills section of Pittsburgh, was also burglarized of some $13,500 personal property.

Connelly, in advertisements in two local newspapers, offered a $1,000 reward for information regarding the burglary of his home. In response, an informant who identified himself as a member of the burglary gang, met with Connelly. He named the relator as the burglar, and Barbara Enscoe, the relator's girlfriend, as receiver of some of the stolen property. He described Barbara and supplied addresses where she could be located. Connelly proceeded to look for Barbara at these addresses. He found her one evening in a bar on the north side of Pittsburgh. He observed at the time that she was wearing his wife's mink stole and wristwatch.

Connelly advised the local police as to these facts the next day. A day later, on December 5, 1966, he, his wife and Police Lieutenant James DiMaria of the Penn Hills Police Department went to the local Justice of the Peace, A. C. Ireland ("Squire").

Connelly asked the Squire to issue search warrants for Barbara's apartment, at No. 9, 1110 Palo Alto Street, Pittsburgh, Pennsylvania, and for the relator's automobile. He told the Squire, under oath, the details of the disclosures made to him by his informant burglary

gang member, earlier here recited. He further testified that when he located Barbara he observed that she was wearing his wife's stolen mink stole and wristwatch. Connelly then executed an affidavit which had been prepared by the Squire's sister who was apparently acting as his clerk. The affidavit did not reflect Connelly's testimony that when he located Barbara she was wearing his wife's stolen mink stole and wristwatch.

Armed with the search warrants issued by the Squire, the police entered Barbara's apartment on December 6, 1966. She and the relator were there at the time. The police found items stolen from the homes of Connelly and Williams in the apartment. They then searched the relator's car and found in it items stolen from Connelly and Williams. The relator and Barbara were then placed under arrest.

A Pittsburgh newspaper published a picture of the items found in Barbara's apartment, which was seen by Williams. He recognized several of the items as property stolen from his home. Search warrants were then issued for Barbara's apartment and the relator's home in Gibsonia, Pennsylvania. Items stolen from Williams' home were found in Barbara's apartment.

It may be noted, parenthetically, that the relator, subsequent to his arrest, admitted to Connelly his participation in the burglary of the latter's home.

The relator was charged in two indictments respecting the Connelly and Williams burglaries:[1] at No. 74 February Sessions 1967, he was indicted with Barbara in the Williams burglary on three counts—Burglary, Larceny and Receiving Stolen Goods; and at No. 81 March Sessions 1967, he was indicted on the same three counts in the Connelly burglary.

Prior to his state trial at which he pleaded not guilty on all indictments and counts, the relator moved to suppress all seized evidence, and subsequent statements and admissions. The trial court, following a hearing, dismissed the suppression motion on December 1, 1967.

On the same day, the relator was found guilty on all counts of the indictment relating to the Connelly burglary and guilty on the Receiving Stolen Goods count of the indictment relating to the Williams burglary. His motion to arrest judgment on the Receiving Stolen Goods count of the indictment relating to the Connelly burglary was granted.

In disposing of the relator's challenge to the Connelly affidavit in the first search of Barbara's apartment, the state court held that "[s]ufficient facts are alleged here to enable the Magistrate to form his own conclusion that stolen property will be found at the address stated." The relator's conviction was subsequently affirmed by the Superior Court of Pennsylvania, and Allowance for Appeal was denied by the Pennsylvania Supreme Court.

On April 17, 1968, the relator was sentenced to a two to four year prison term on Indictment No. 81 March Sessions 1967. Sentence was suspended on Indictment No. 74 February Sessions 1967.

His state remedy exhausted, the relator filed the instant petition for a writ of habeas corpus in the United States District Court for the Western District of Pennsylvania. He urged that the facts as evidenced by Connelly's affidavit did not constitute probable cause for the issuance of the initial search warrants and that all evidence seized afterwards, and his admission of guilt to Connelly, were "fruits of the poisonous tree."

At the District Court evidentiary hearing, objected to by the relator, Connelly testified that he had told the Squire, under oath, of observing Barbara's wearing of Mrs. Connelly's mink stole and wristwatch.

---

1. The relator and Barbara were charged with unlawful possession of narcotics in a third indictment based on the discovery of marijuana in Barbara's apartment on the first search. The relator was acquitted on this charge.

Mrs. Connelly and Police Lieutenant DiMaria substantially corroborated Connelly's testimony at the evidentiary hearing.

In an Opinion, accompanying its Order denying the relator's habeas corpus petition, the District Court stated in relevant part:[2]

"[I]t is clear that the material supplied by the informant and the corroboration supplied by Connelly's investigation supplied both probable cause and evidence as to the reliability of the information. . . . "

" . . . Pennsylvania law . . . as set out in Commonwealth v. Crawley, 432 Pa. 627, [247 A.2d 226,] 209 Pa.Super. 70, [223 A.2d 885,] holds that sworn oral testimony before a magistrate may be used to supplement facts contained in the affidavit. This court, in Commonwealth of Pennsylvania, ex rel. Feiling v. Sincavage, 313 F.Supp. 967 (W.D.Pa.1970), affirmed per curiam 439 F.2d 1133 (3rd Cir. 1971), also recognized the validity of supplementary oral testimony to sustain a search warrant.

"Although Justice of the Peace Ireland died before the evidentiary hearing in this court, nevertheless we find the testimony of Mr. Connelly, as corroborated by his wife and Lieutenant DiMaria, to be credible and reliable. A study of the transcript during the trial in the state court also contains references to Connelly's investigation and to his observation of Miss Enscoe before the search warrant was issued.

"Because it is alleged that a federal right has been violated, it becomes our duty to determine the validity of the attack by review of any available information even if it involves taking of testimony not given to the state court. Since we determine that the warrant was valid when the oral statements made to the magistrate are considered, in all events, then it becomes immaterial that the state court based its decision on less evidence.

"While it is desirable that all of the information presented to the magistrate be included in the affidavit, we do not believe that such a requirement is of constitutional dimensions. Accordingly, the petition for writ of habeas corpus is denied. An appropriate order will be entered." (footnote omitted).

The hard core of the relator's position is that probable cause is not shown on the face of the affidavit [3] in support of the search warrants here involved and that the District Court erred in receiving Connelly's oral testimony before the Squire in supplementation of the affidavits.

2. The Opinion of the District Court is presently unreported.

3. The affidavit, prepared by the Squire's sister, sworn to and signed by Connelly, states in relevant part:
"AND NOW, to wit, this 5th day of Dec. 1966, before me the undersigned authority, personally appeared Eugene Connolly [sic] who being duly sworn (affirmed) according to law deposes and says that he has reason to believe, and that he does so believe, that certain articles, items, things and other property, which are particularly described as follows, to-wit, . . . and a part thereof, are now situate at and in a certain building or place, which is specifically described as follows, to wit, apartment #9, at 1110 Palo Alto Street, Pittsburgh, Pa., the same believed to be the apartment of Barbara Enscoe.
"AND FURTHER, that the facts and circumstances tending to establish the belief that the aforesaid Articles, items, things and other property are now situate at and in the above described building or place, are (inter alia) as follows: that information was received from an informer to the effect that Barbara Enscoe was seen wearing a fur stole that was described as being identical to that stolen from the affiant and that Barbara Enscoe is a friend of the man the informer claims committed the burglary of the affiant's home. Said informer identified himself as being a former member of the burglary gang and has good knowledge of their activities."

We do not subscribe to the relator's contention.

■ We are of the opinion that a federal court, in acting on a habeas corpus petition arising out of a state conviction, may consider sworn oral testimony presented to a state judicial officer who issued a search warrant, in determining whether probable cause existed for the warrant's issuance. Otherwise stated, we hold that in a federal habeas proceeding arising out of a state conviction, sworn oral testimony presented to a state judicial officer in an application for a search warrant may supplement an affidavit for the warrant which on its face fails to establish probable cause for the warrant's issuance.

Our holding is without precedent in this Court.[4]

It is in accord with the views expressed by our counterparts in the Second,[5] Eighth [6] and Ninth [7] Circuits. The other Circuits have not reached the issue embraced in our holding. Nor has the Supreme Court of the United States expressly done so.[8]

The Supreme Court has, however, in two cases arising from *state criminal convictions,* indicated that sworn oral testimony presented to a state judicial officer in an application for a state search or arrest warrant may constitutionally supplement an affidavit which, on its face, fails to establish probable cause for the warrant's issuance.

The Court did so in the leading case of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), where questions concerning the constitutional requirements for obtaining a state search warrant were presented, and Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), where the constitutionality of a state arrest and ensuing search and seizure was at issue.

---

4. Two district courts in this Circuit have held that sworn "[o]ral testimony as well as affidavit in writing, may serve as the basis for the issuance of a [state search] warrant under constitutional standards." Commonwealth of Pennsylvania ex rel. Feiling v. Sincavage, 313 F.Supp. 967, 970 (W.D.Pa.1970), aff'd on other grounds, 439 F.2d 1133 (3 Cir. 1971) and United States ex rel. Boyance v. Myers, 270 F.Supp. 734, 738 (E.D.Pa.1967), rev'd on other grounds, 398 F.2d 896 (3 Cir. 1968). We noted in our disposition of the appeals in these two cases that we did not reach the quoted holdings of the district courts. In *Boyance* we said: "We do not reach the point urged by the appellant that unrecorded oral statements to the magistrate may not be the basis for a finding of probable cause to issue a warrant." 398 F.2d at 897 n. 1.

5. United States ex rel. Pugach v. Mancusi, 411 F.2d 177 (2 Cir.), cert. denied, 396 U.S. 889, 90 S.Ct. 172, 24 L.Ed.2d 163 (1969) ; United States ex rel. Schnitzler v. Follette, 379 F.2d 846 (2 Cir. 1967).
 In *Pugach,* Judge (now Chief Judge) Friendly said :
 "Since the State does not seek to sustain the sufficiency of the affidavit, . . . [the relator] is entitled to a hearing at which *the State may show, if it can, that the judge had other sufficient in-*formation before him either when the bugging was initially authorized or on the extensions of the authority." 411 F.2d at 180 (footnote omitted) (emphasis supplied).

6. Miller v. Sigler, 353 F.2d 424 (8 Cir. 1965), cert. denied, 384 U.S. 980, 86 S.Ct. 1879, 16 L.Ed.2d 690 (1966). See also Frazier v. Roberts, 441 F.2d 1224 (8 Cir. 1971).

7. Boyer v. State of Arizona, 455 F.2d 804 (9 Cir. 1972) ; Sherrick v. Eyman, 389 F.2d 648 (9 Cir.), cert. denied, 393 U.S. 874, 89 S.Ct. 167, 21 L.Ed.2d 144 (1968).

8. The question whether sworn oral testimony adduced to a state judicial officer in an application for a search warrant could be considered in supplementation of an insufficient affidavit was presented to the United States Supreme Court in a petition for certiorari from a ruling of the Supreme Court of the State of Washington which answered the question in the affirmative at 74 Wash.2d 154, 443 P.2d 815 (1968) based on that Court's prior holding at 72 Wash.2d 959, 435 P.2d 994 (1967). The Supreme Court denied certiorari, over the dissent of Mr. Justice Brennan, joined in by Mr. Justice Marshall. Christofferson v. Washington, 393 U.S. 1090, 89 S.Ct. 855, 21 L.Ed.2d 783 (1969).

In *Aguilar, supra,* a state search warrant was issued to local police officers upon an affidavit which stated in relevant part:

> "Affiants have received reliable information from a credible person and do believe that heroin . . . and other narcotics . . . are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."

The affidavit provided no further information concerning either the undisclosed informant or the reliability of the information. The warrant was issued, a search made, and the evidence obtained was admitted at the trial over objections challenging the validity of the search warrant. The defendant was found guilty of possessing heroin. His conviction was affirmed on appeal to the Texas Court of Criminal Appeals.

The Supreme Court granted a writ of certiorari to the Texas Court of Criminal Appeals. It reversed the conviction on the ground that the affidavit on it face failed to establish probable cause for the issuance of the search warrant. In doing so it held that although an affidavit supporting a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant, the judicial officer issuing the warrant must be informed of some of the underlying circumstances relied on by the informant and some of the underlying circumstances from which the affiant concluded that the informant, whose identity was not disclosed, was "credible" or his information "reliable."

It is significantly pertinent here that the Court after noting that "[i]t is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention," further stated that if facts other than those contained in the affidavit *"had been appropriately presented to the magistrate this would, of course, present an entirely different case."* 378 U.S. at 109 n. 1, 84 S.Ct. at 1511 (latter emphasis supplied.) [9]

In *Whiteley, supra,* the constitutionality of the use of evidence seized during a search incident to an alleged illegal arrest, was challenged by a state prisoner in a federal habeas corpus proceeding. The Court reversed denial of habeas corpus relief below on the ground that the complaint [10] for an initial arrest warrant, presented by a county sheriff, acting on a tip, failed to show probable cause for its issuance.

In doing so, the Court emphasized that the parties had stipulated in the habeas corpus proceeding that "the sole support for the arrest warrant issued at Sheriff Ogburn's request was the complaint.

---

9. Note 1 states in relevant part:
"The record does not reveal, nor is it claimed, that any other information was brought to the attention of the Justice of the Peace. It is elementary that in passing on the validity of a warrant, the reviewing court may consider *only* information brought to the magistrate's attention. Giordenello v. United States, 357 U.S. 480, 486 [78 S.Ct. 1245, 2 L.Ed.2d 1503], 79 C.J.S. 872 (collecting cases). . . . The fact that the police may have kept petitioner's house under surveillance is thus completely irrelevant in this case, for, in applying for the warrant, the police did not mention any surveillance. Moreover, there is no evidence in the record that a surveillance was actually set up on petitioner's house. Officer Strickland merely testified that 'we *wanted to* set up surveillance on the house.' If the fact and results of such a surveillance had been appropriately presented to the magistrate, this 'would, of course, present an entirely different case." (emphasis that of the Court).

10. The complaint for the arrest warrant follows:
"I, C. W. Ogburn, do solemnly swear that on or about the 23 day of November, A. D. 1964, in the County of Carbon and State of Wyoming, the said Harold Whiteley and Jack Daley, defendants did then and there unlawfully break and enter a locked and sealed building [describing the location and ownership of the building]."

. . ." 401 U.S. 564–565, 91 S.Ct. 1035 (foot-omitted).[11]

Relevant here is the fact that in stressing that the complaint was the sole basis for issuance of the warrant, the Court, in a footnote which cited *Aguilar, supra,* inferentially indicated that "an otherwise insufficient affidavit" can be "rehabilitated" by sworn oral testimony presented in an application for a warrant. 401 U.S. at 565 n. 8, 91 S.Ct. 1031.[12]

It may be noted, parenthetically, that the Tenth Circuit has construed footnote 8, in *Whiteley, supra,* as holding that "[a]n insufficient affidavit may be 'rehabilitated' by testimony disclosed to the issuing magistrate." *Leeper v. United States,* 446 F.2d 281, 286 (1971), cert. denied, 404 U.S. 1021, 92 S.Ct. 695, 30 L.Ed.2d 671 (1972).

As earlier stated, the Supreme Court has not ruled upon the question here presented, viz, whether a federal court, in acting on a habeas corpus petition arising out of a state conviction, may consider sworn oral testimony presented to a state judicial officer in an application for a search warrant in determining whether probable cause existed for the warrant's issuance.

The Supreme Court's express rulings with respect to Fourth Amendment probable-cause requirements were summarized in *Whiteley, supra,* as follows:

"The decisions of this Court concerning Fourth Amendment probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with sufficient information to support an independent judgment that probable cause exists for the warrant. Spinelli v. United States, 393 U.S. 410 [89 S.Ct. 584, 21 L.Ed.2d 637] (1969); United States v. Ventresca, 380 U.S. 102 [85 S.Ct. 741, 13 L.Ed.2d 684] (1965); Aguilar v. Texas, 378 U.S. 108 [84 S.Ct. 1509] (1964); Rugendorf v. United States, 376 U.S. 528, [84 S.Ct. 825, 11 L.Ed.2d 887] (1964); Jones v. United States, 362 U.S. 257 [80 S.Ct. 725, 4 L.Ed.2d 697] (1960); Giordenello v. United States, 357 U.S. 480 [78 S.Ct. 1245, 2 L.Ed.2d 1503] (1958)." 401 U.S. at 564, 91 S.Ct. at 1035 (footnote omitted).

■ The Fourth Amendment does *not* require that a sworn statement in support of an application for a search warrant must be reduced to writing. *See* Sherrick v. Eyman, 389 F.2d 648, 652 (9 Cir.), cert. denied, 393 U.S. 874, 89 S.Ct. 167, 21 L.Ed.2d 144 (1968).

■ The Fourth Amendment requires *only* that the judicial officer issuing a search warrant be supplied sufficient information, under oath or affirmation, which would support an independent judgment that probable cause exists for the warrant's issuance.[13]

---

11. The Stipulation was the basis for the Court's denial of the State's request for remand to the District Court so that it could "develop a record which might show that the issuing magistrate had factual information additional to that presented in Sheriff Ogburn's complaint." 401 U.S. at 569, 91 S.Ct. at 1037.

12. Footnote 8 stated in relevant part:
"More importantly, even the dissent apparently concedes that as far as the record in this case reveals, the only information Sheriff Ogburn communicated to the magistrate issuing the warrant was contained in his written complaint reproduced above. Under the cases of this Court, an otherwise insufficient affidavit cannot be rehabilitated by testimony concerning information possessed by the affiant when he sought the warrant but not disclosed to the issuing magistrate. See Aguilar v. Texas, 378 U.S. 108, 109 n. 1 [84 S.Ct. 1509, 1511, 12 L.Ed.2d 723]. A contrary rule would, of course, render the warrant requirements of the Fourth Amendment meaningless."

13. "AMENDMENT IV—SEARCHES AND SEIZURES
"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, *and no Warrants shall issue, but upon prob-*

■ What has been said brings us to the relator's contention that Rule 41(c) Fed.R.Crim.P., pertaining to "[s]earches and [s]eizures," [14] requires that "[a] warrant shall issue only on affidavit sworn to . . . and establishing the grounds for issuing the warrant," and that this requirement precludes rehabilitation of an insufficient search warrant affidavit in a federal habeas corpus action arising out of a state conviction.

We do not subscribe to this contention for these reasons:

■ The federal criminal rules are not constitutional imperatives.[15] They do not extend to prosecutions in state courts for violations of state criminal laws.[16] They govern *only* prosecutions in federal courts for violation of criminal laws of the United States.[17] They are procedural only.[18]

■ Moreover, federal habeas corpus proceedings are *civil*, and not criminal, in nature.[19] They are governed by the Federal Rules of Civil Procedure. Rule 81(a)(2) of the civil rules specifies that "[t]*hese rules are applicable to proceed-*

*ings for . . . habeas corpus . . .* to the extent that the practice in such proceedings is not set forth in statutes of the United States and has heretofore conformed to the practice in civil actions." (emphasis supplied).

It must be said at this juncture that the three cases cited by the relator do not afford an iota of nourishment to his contention that in a federal habeas corpus action arising out of a state conviction, Rule 41(c) precludes supplementation of an insufficient warrant affidavit by oral testimony presented to the judicial officer who issued the warrant.

First, only one of the cited cases, Frazier v. Roberts, 441 F.2d 1224 (8 Cir. 1971), involved a habeas corpus proceeding arising out of a state conviction. There, the Court in fact held that the Fourth Amendment permits supplementation of an insufficient affidavit by sworn oral testimony presented to the warrant-issuing magistrate, and it denied supplementation only because the offered oral testimony had not been given under oath.

---

*able cause, supported by Oath or affirmation,* and particularly describing the place to be searched, and the persons or things to be seized." (emphasis supplied).

14. The Federal Rules of Criminal Procedure were amended April 24, 1972, effective October 1, 1972. 18 U.S.C.A. (Supp. 1973).
We are here concerned with the Rules prevailing December 5, 1966, when the search warrant involved was applied for and issued.

15. United States v. Schwartz, 372 F.2d 678, 682 (4 Cir. 1967).

16. Cameron v. Hauck, 383 F.2d 966, 971 n. 7 (5 Cir. 1967), cert. denied, 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 828 (1968).

17. Rule 1, Fed.R.Crim.P., in effect when the warrant here involved was issued, provides:
"These rules govern the procedure in the courts of the United States and before United States commissioners [now United States magistrates] in all criminal proceedings, with the exceptions stated in Rule 54."

18. Independent of all other considerations, and standing alone, the following factors negate the relator's contention that Rule 41(c) Fed.R.Crim.P. is applicable here: the Rule relates to a warrant *"directed to a civil officer of the United States* authorized to *enforce or assist in enforcing any law thereof* or to a person so authorized by the President of the United States." (emphasis supplied). In the instant case the search warrant was issued to a state police officer incident to a state prosecution for violation of a state's criminal laws and *not* to a federal officer incident to a federal prosecution for violation of a federal criminal law.

19. Fay v. Noia, 372 U.S. 391, 423–424, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Riddle v. Dyche, 262 U.S. 333, 335–336, 43 S.Ct. 555, 67 L.Ed. 1009 (1923); Fisher v. Baker, 203 U.S. 174, 181, 27 S.Ct. 135, 51 L.Ed. 142 (1906). In *Dyche* it was said: "The writ of *habeas corpus* is not a proceeding in the original criminal prosecution, but an independent civil suit. . . ." We treated a habeas corpus petition as a civil proceeding in United States ex rel. Stone v. Robinson, 431 F.2d 548, 551 (1970).

In United States v. Berkus, 428 F.2d 1148 (8 Cir. 1970), there was a *federal* prosecution for violation of the *federal narcotics laws.* There, the search warrant had been issued by a *state* judicial officer on the affidavit of a city policeman. The Court ruled that the sworn oral testimony of the policeman presented in his application for the warrant could supplement his insufficient affidavit. It may be noted, parenthetically, that Rule 41(c) was not adverted to in the Court's opinion.

United States v. Sterling, 369 F.2d 799 (3 Cir. 1966), relied on by the relator, is inapposite on its setting and its facts. Apart from the circumstance that *Sterling* was a federal, and not a state, prosecution it did not present the question whether sworn oral testimony presented to a magistrate in an application for a warrant may supplement an insufficient affidavit.

In-*Sterling,* it was contended that information presented in an affidavit for a search warrant had been illegally obtained and that accordingly it could not be held to establish probable cause.

The District Court rejected the relator's contention. It also alternatively held that the testimony, presumably adduced at the trial, *and not to the magistrate,* "independent[ly]" established probable cause for the warrant's issuance.[20]

On review, we affirmed the trial court's primary holding that the warrant affidavit legally established probable cause. We, however, held that its alternative ground was "legally unacceptable," in this statement:

> "The lower court's alternative ground for upholding the search warrant was based on information not in the affidavit. Such an approach is legally unacceptable. The affidavit must be the exclusive support for the warrant." 369 F.2d at 802 n. 2.

Coming now to the relator's challenge to the constitutionality of the Pennsylvania rule which permits rehabilitation of an insufficient affidavit by sworn oral testimony presented to the magistrate issuing the warrant:

In Commonwealth v. Crawley, *supra,* it was held that the Fourth Amendment and Article 1, § 8 of the Pennsylvania Constitution, P.S.[21] do not prohibit the use of sworn oral testimony "to demonstrate facts relied on by the magistrate in issuing the warrant." 209 Pa.Super. 70, at 76, 223 A.2d 885, at 889.

In doing so, the Court said:

> "In Pennsylvania when a warrant is under attack on the ground there were insufficient facts to support a finding of probable cause the rule has been that sworn facts told to the magistrate at the time the warrant was issued are admissible to support the finding of probable cause. (citing cases)." 209 Pa.Super. at 76–77, 223 A.2d at 889.[22]

> "Sec. 8. Security from searches and seizures
>
> "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

20. In doing so, the trial court said:
 "The foregoing facts disclose that the evidence which Sterling seeks to suppress was duly obtained pursuant to a valid search warrant. Sterling seeks to go behind the warrant and establish that the whole search was the 'fruit of a poisonous tree'. However, the testimony shows that the officer executing the warrant (as well as Sams) had long had a tip from a reliable informer regarding the tanks, and the warrant could stand on the basis of independent information unconnected with the allegedly poisonous tree." 244 F.Supp. 534 (W.D.Pa.1965) at 536.

21. Article 1, § 8 of the Pennsylvania Constitution provides:

22. The *Crawley* rule was reaffirmed and applied in Commonwealth v. Milliken, 450 Pa. 310, 312–318, 300 A.2d 78, 80–82 (decided January 30, 1973). In *Milliken,* the Court announced that in exercise of its supervisory powers it would "formulate by rule of Court appropriate pro-

■ We agree with the Court's holding that the stated Pennsylvania rule does not contravene the Fourth Amendment or the Pennsylvania Constitution.

■ It is well settled that a state has a right to formulate its own rules of procedure in cases arising out of violations of its criminal laws, providing that the state procedures do not contravene constitutional guarantees.

In Ker v. California, 374 U.S. 23, 34, 83 S.Ct. 1623, 1630, 10 L.Ed.2d 726 (1963), it was said:

"The States are not . . . precluded from developing workable rules governing arrests, searches and seizures to meet 'the practical demands of effective criminal investigation and law enforcement' in the States, provided that those rules do not violate the constitutional proscription of unreasonable searches and seizures and the concomitant command that evidence so seized is inadmissible against one who has standing to complain."

In Mapp v. Ohio, 367 U.S. 643, 659 n. 9, 81 S.Ct. 1684, 1693, 6 L.Ed.2d 1081 (1961), the Court said in relevant part:

"As is always the case, however, state procedural requirements governing assertion and pursuance of direct and collateral constitutional challenges to criminal prosecutions must be respected."

Again in Carter v. Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172 (1946), the Court said at page 175, 67 S.Ct. at page 218:

"But the Due Process Clause has never been perverted so as to force upon the forty-eight States a uniform code of criminal proocedure. *Except for the limited scope of the federal criminal code, the prosecution of crime is a matter for the individual States. The Constitution commands the States to assure fair judgment. Procedural details for securing fairness it leaves to the States. It is for them, therefore, to choose the methods and practices by which crime is brought to book, so long as they observe those ultimate dignities of man which the United States Constitution assures.* Brown v. New Jersey, 175 U.S. 172, 175 [20 S.Ct. 77, 78, 44 L. Ed. 119]; Missouri v. Lewis, 101 U.S. 22, 31 [25 L.Ed. 989]. *Wide discretion must be left to the States for the manner of adjudicating a claim that a conviction is unconstitutional. States are free to devise their own systems of review in criminal cases.*" (emphasis supplied).

■ This, too, must be said with regard to the relator's contention that the District Court erred in its evidentiary hearing on his habeas petition when it went beyond the state trial record and permitted Connelly to testify with respect to his sworn statements to the Squire in support of his applications for the search warrants here involved.

The stated contention is utterly without merit.

The Supreme Court has squarely ruled that "the Federal District Court has a broad *power* on habeas to hold an evidentiary hearing and determine the facts." Fay v. Noia, 372 U.S. 391, 422, 83 S.Ct. 822, 840 (1963) (emphasis by the Court), and that "[t]he language of Congress, the history of the writ, the decisions of this Court, all make clear that the power of inquiry on federal habeas corpus is *plenary.*" Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963) (emphasis supplied).

In *Townsend, supra,* the Court specifically held that the *State,* as well as the

---

cedural requirements of a sufficient written record made contemporaneously with the issuance of search warrants," and that "[*b*]*ecause this issue is not one of constitutional proportions, the rule will be wholly prospective and thus not applicable to the case at bar.*" (emphasis supplied). It should be noted that the Court on March 28, 1973, adopted Rule 2003, Pennsylvania Rules of Criminal Procedure, 19 P.S.Appendix, pursuant to its announcement in *Milliken,* specifying that the Rule would be "effective for warrants issued sixty days hence."

petitioner, can present "testimonial and documentary evidence" outside the state court record, in a habeas evidentiary hearing.

In doing so, it said (p. 322, 83 S.Ct. p. 762):

"To be sure, the state-court record is competent evidence, and either party may choose to rely solely upon the evidence contained in that record, but the petitioner, *and the State,* must be given the opportunity to present other testimonial and documentary evidence relevant to the disputed issues." (footnote omitted) (emphasis supplied).

The vitality of the cited rulings was attested to in Harris v. Nelson, 394 U.S. 286, 291, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969).

 We need not dwell on the relator's contention that the District Court erred in finding credible the testimony of Connelly, his wife and Police Lieutenant DiMaria, respecting Connelly's sworn testimony on his application for the search warrants.

Whether information was given to the magistrate on oath or affirmation within the meaning of the Fourth Amendment presents a question of fact. Frazier v. Roberts, *supra*, 441 F.2d at 1228.

In United States ex rel. Stone v. Robinson, 431 F.2d 548, 551 (3 Cir. 1970), we said:

"The standard of review that this Court must follow in this habeas corpus claim where factual determinations were made below is the same as that governing our review of other civil matters tried to the district court without a jury; i. e., under Rule 52 (a), Fed.R.Civ.P., 28 U.S.C.A., the findings of the court below will not be set aside unless they are 'clearly erroneous.' "

On review of the record we certainly cannot say that the District Court's challenged fact-findings are "clearly erroneous."

Other points raised by the relator do not merit discussion.

For the reasons stated the Order of the District Court denying the relator's habeas corpus petition will be affirmed.